**In re KRC, INC., Debtor.**

**Bankruptcy No. 98–20315.**

United States Bankruptcy Court,
D. Idaho.

Oct. 20, 1998.

David Manko, Coeur d'Alene, Idaho, for debtor.

R. Wayne Sweney, Lukins & Annis, Coeur d'Alene, Idaho, for Wells Fargo Bank.

## MEMORANDUM OF DECISION and ORDER

TERRY L. MYERS, Bankruptcy Judge.

This matter comes before the Court upon the motion for relief from stay of Wells Fargo Bank ("Bank"). 11 U.S.C. § 362(d). A § 362(e) final hearing was held upon the Bank's motion at which time the Bank and the Debtor in Possession KRC, Inc. ("Debtor") presented evidence and argument. This

opinion constitutes the Court's Findings of Fact and Conclusions of Law upon the matters presented under the motion. Fed. R.Bankr.P. 9014, 7052; Fed.R.Civ.R. 52.

## FACTS

Certain of the underlying facts are not disputed. The Bank holds a secured obligation with a present balance of approximately $279,000.00. That obligation is secured by several different categories of collateral including equipment, vehicles, accounts receivable, contract rights and similar intangibles, together with all proceeds of any of the identified collateral. The obligation is further guaranteed by Debtor's principals, Kathy and Randy Cardwell, and that guarantee is, it appears, secured by real estate.

A great deal of evidence was presented in regard to the value of Debtor's presently held equipment. The appraisal prepared by the Bank's expert, Exhibit 2, asserted a fair market value of $52,325.00 for several specifically identified items. However, testimony indicated that two trailers which were appraised for $31,500.00 were actually leased by the Debtor from a third party and were not part of the Bank's collateral. The Court thus finds, for the purpose of the present motion, that the equipment (essentially vehicles) has a value of $18,500.00.[1]

In regard to the accounts receivable and contract rights, which further collateralize the Bank's debt, the Debtor's president and bookkeeper testified regarding the ongoing work of the Debtor and anticipated profits or collections there from. This would include, given the Debtor's method of doing business, the collection of existing "receivables" (including retainages from prior jobs) as well as the anticipated profits from ongoing and future work. The Debtor's projection of cash flow for the last six months of 1998 indicates that it can generate a monthly net profit (including retainage) of between $11,000.00 and $22,000.00 at least through November,

---

1. Valuation under § 506(a) of the Code is driven by the proposed use of the property or the context in which valuation is determined. this value, as well as any other value today determined by the Court, may be revisited in the context of later proceedings in this case. The Court additionally notes that there is apparently other equipment owned by the Debtor which constitutes collateral for the Bank's obligation, though no party provided conclusive evidence as to its value.

1998. For the six month period, Debtor estimates a $78,604.00 net profit (composed of $37,831.00 in retainage and $40,773.00 profit).[2]

It is true that the Debtor did not specifically deal with the question of the aging or collectibility of existing accounts receivable. Rather, Debtor focused on the issue of anticipated profitability of its operations. This is relevant in regard to the ability of the Debtor to provide adequate protection through periodic or proposed payment (as opposed to adequate protection through equity cushion alone). Debtor has proposed making adequate protection payments to the Bank commencing in September and continuing through confirmation of a plan which Debtor says will provide for full payment to the Bank.[3] Debtor's pleadings and exhibits assert that, from the total outstanding "accounts receivable," it can generate a net profit of $40,774.00 even after payment of $5,700.00 per month to the Bank and after reserving $37,831.00 in retainage for the benefit of the Bank.

The Debtor further alleges that there is an outstanding account receivable owed by the State of Idaho in the amount of $189,000.00 which is collateral for the Bank and thus provides it with additional protection. This account, however, is in litigation.

■ The Bank is also protected by the guarantee of the Debtor's principals and, it is alleged, by unencumbered real estate owned by those principals. Though this property is not property of the Debtor's estate, it would be appropriate to consider the availability of this asset as protection for the Bank's interest pending the Debtor's attempts to confirm a plan.[4] The testimony of the Debtor is that this property has a value of $185,000.00.[5]

## DISCUSSION

■ The Bank would be entitled to relief from the automatic stay if it can establish cause, including a lack of adequate protection of its interest. § 362(d)(1). The Bank may also be entitled to stay relief if it establishes that the Debtor has no equity in the subject property (*i.e.* the collateral) *and* such property is not necessary for an effective reorganization. § 362(d)(2)(A) and (B). The Bank bears the burden of proof on the question of the Debtor's equity in such property, § 362(d)(2)(A), and the Debtor bears the proof on all other issues. § 362(g)(1) and (2).

The evidence leaves something to be desired as far as certainty as to the values of the various assets, and the amounts which can be reasonably assured of collection over the near term from the Debtor's operations. Nevertheless, the Court is required, at this juncture, to attempt to establish those values in order to determine whether or not stay relief is appropriate.

The total obligation to the Bank for purposes of this analysis is $279,000.00. The Court finds that the equipment collateral for the obligation (*sans* trailers) has a value of $18,500.00. The Court recognizes that these values may decline through ongoing depreci-

---

**2.** These figures do not include Debtor's estimates of income or a profit from jobs being bid at the present time, though both the Debtor's exhibit and the testimony of the bookkeeper express confidence in Debtor's ability to increase the above figures. Nor do these figures include the specific "receivables" addressed later in this opinion.

**3.** Since the § 362(e) final hearing, Debtor has filed its amended disclosure statement and plan, and hearing on the adequacy of the disclosure statement is scheduled for October 26. Debtor also, by post-hearing pleading on September 28, profferred an additional account receivable as "adequate protection". This receivable is already collateral of the Bank, and Debtor admits litigation is required to realize upon it. The new proffer therefore adds little to the present analysis.

**4.** The Court was not provided copies of security documents on the Cardwells' "lake front" property. However, part of the Bank's Exhibit No. 1 is a document entitled "Hypothecation/Lent Collateral Agreement and Guaranty" dated May 6, 1994 which refers to the Cardwells' grant of a deed of trust on that date securing the KRC debt to the Bank. The Bank at no time during the hearing disputed that it held this additional security.

**5.** It is true, as the Bank contended, the Debtor earlier ascribed a $150,000.00 value to this real estate though that representation was disavowed at hearing by the Debtor's president who held to the $185,000.00 valuation. No independent evidence of value of the real estate was provided.

ation and use of the property, but has no evidence upon which to quantify that decline. Nor does it have evidence as to the value of other equipment collateral.

The Court further finds the real estate held by the Debtor's principals and which secures the principals' guarantee of the total KRC obligation owed to the Bank has a value of approximately $160,000.00. This figure represents a discount of approximately 10 to 15% from the asserted fair market value of the property based upon the fact that the Debtor's estimates do not appear to include any costs for sale of the property and thus may well have overstated the net realizable value of this collateral to the Bank. There was no evidence presented as to any other impediments to the Bank's realizing upon this property.

I find that the Bank's security interest in the ongoing proceeds generated by the Debtor's business has a value, at the present, of at least $75,000.00. This analysis relies primarily upon the evidence of the Debtor regarding the net profit expected from the ongoing work and from currently collectible jobs, including the 5% retainage.

Subtraction of the $18,500.00 equipment and vehicle value, $160,000.00 net value of the real estate, and the $75,000.00 in work in progress, leaves an exposure to the Bank of $25,500.00.

The Debtor's testimony, not disputed by the Bank, is that the Debtor has a $189,-000.00 receivable from the State of Idaho. While it is in litigation, the Court has not been provided with any evidence which would establish that the entirety of the amount is uncollectible. It appears reasonable to assume, regardless of the factors of discount, aging or collectibility which might be applied, that the state and other receivables [6] would have enough value to cover the above-calculated projected deficiency of $25,500.00.

At least for the purpose of the present motion, the Court finds that the Debtor's property is necessary for any effective reorganization of this Debtor's business, and that the Bank is adequately protected until such time as plan confirmation comes before the Court. The real estate securing the Cardwells' guarantee of the KRC debt is relevant to the issue of adequate protection under § 362(d)(1). While its value can be considered for this purpose, as was done above, it is not "property" in the sense of § 362(d)(2)(A), which concerns only "property of the estate" protected by the § 362(a) stay. It would therefore be inappropriate to include this real estate in calculating "equity" under § 362(d)(2)(A).

Nevertheless, § 362(d)(2) requires the Court to find both that (A) Debtor has no equity in its property *and* (B) the property isn't required for an effective reorganization. While there might well be a question as to "equity" if valuing just KRC's pledged assets and not the Cardwells' realty, the Court finds that—at this stage—the Debtor has prevailed on the element of need under § 362(d)(2)(B).

Debtor must still, however, move the case toward the "effective reorganization" contemplated by § 362(d)(2)(B). As noted above, the current analysis of value is for stay relief purposes, and may vary in the context of plan confirmation. § 506(a).

Additionally, nothing in this decision varies the requirements of § 363. The Debtor may not use or dispose of any collateral, or any proceeds of collateral, without the Bank's express written consent or an order entered on notice to the Bank and hearing.[7]

6. The latest "proffer" of accounts received, made contemporaneously with the filing of the Plan, is in the face amount of $33,354.35. *See* footnote 3. Debtor's exhibits, and its liquidation analysis in the disclosure statement, appear to show significant additional "receivables" but no evidence was presented regarding the net, presently realizable value of the same as collateral. Given other collateral available to the Bank, the Court need not at this stage reach the issue of valuing all the receivables.

7. There was evidence to the effect that the Debtor had previously sold collateral of the Bank. While it appears certain sales may have had at least the tacit approval of the Bank, through communication between Bank officers and Debtor's employees or principals, some dispositions may not have been authorized. The Court reserves the right to further consider the conduct of the Debtor in this regard as may be appropriate.

## ORDER

Based upon the foregoing, the Motion for Relief from Stay of the Bank is DENIED, without prejudice.